NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| VANDA PHARMACEUTICALS INC., Plaintiff, v. TEVA PHARMACEUTICALS USA, INC., Defendant. | Civil Action Nos.: 22-7528; 22-7529  OPINION |
| VANDA PHARMACEUTICALS INC., Plaintiff, v. APOTEX INC. et al, Defendants. | |

**CECCHI, District Judge.**

**I.      INTRODUCTION**

Plaintiff Vanda Pharmaceuticals Inc. ("Vanda" or "Plaintiff") filed actions for patent infringement against defendants Teva Pharmaceuticals USA, Inc. ("Teva"), Apotex Inc., and Apotex Corp. (collectively, "Defendants"). Presently before the Court are Defendants' cross-motions to transfer pursuant to 28 U.S.C. § 1404. *See, e.g.,* ECF No. 23.[1] Plaintiff opposed the

---

[1] Although these actions were filed under separate dockets, *see* Civ. Nos. 22-7528, 22-7529, Defendants filed joint memoranda of law, and the cross-motions (as well as Plaintiff's submissions and pleadings) are substantially identical across each case. Therefore, the Court need not address each case separately for the purpose of its analysis here. Accordingly, all ECF numbers referenced in this Opinion refer to No. 22-7528 unless stated otherwise. The cross-motions were submitted in response to Plaintiff's motions for a temporary restraining order. *See* ECF No. 7; *see also* Civ. No. 22-7529, ECF No. 5.

1

motions. *See* ECF No. 40. For the reasons set forth below, Defendants' motions are GRANTED, and the Court transfers these cases to the United States District Court for the District of Delaware.

## II. BACKGROUND

Vanda is a pharmaceutical company incorporated in Delaware with its principal place of business in Washington, D.C. *See* ECF No. 1 ("Compl.") at ¶ 1. Vanda asserts that its business model generally consists of acquiring compounds that failed in development by other drug companies, developing them into FDA-approved products, and then commercializing them. *Id.* ¶ 20. As relevant here, Vanda acquired the drug tasimelteon, now marketed as HETLIOZ®, which was subsequently approved by the FDA to treat rare sleep disorders, including "a debilitating condition that principally affects totally blind people called Non-24-Hour Sleep-Wake Disorder ("Non-24")." *Id.* ¶¶ 20-23, 25-26; ECF No. 7-1 at 5. Vanda holds multiple patents relating to tasimelteon. The suit for patent infringement underlying the instant motion to transfer concerns U.S. Patent No. 11,285,129 (the '129 patent), which issued on March 29, 2022 and relates to a method of administering tasimelteon to a patient and the interaction between tasimelteon and beta blockers. *Id.* ¶¶ 13-14; *see also* ECF No. 7-1 at 5.

Prior to this action, the parties engaged in lengthy litigation concerning multiple patents related to tasimelteon in the United States District Court for the District of Delaware. *Id.* at 12-13. In 2018, upon Defendants' submissions of Abbreviated New Drug Applications (ANDAs) to obtain FDA approval to manufacture and sell generic versions of HETLIOZ®, Vanda filed suit in the District of Delaware, asserting multiple related patents.[2] *See* Compl. ¶¶ 22-39, *Vanda Pharms.*

---

[2] Vanda originally asserted six patents but added others through the course of litigation. *See, e.g.,* Stipulation to Amend Compl., *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.*, No. 18-cv-651 (D. Del. Dec. 7, 2018) (adding U.S. Patent No. 10,071,977); *see* Def. Br. at 5 (noting 15 patents asserted in total). Through "forced narrowing of the asserted patents and claims by the district court" in Delaware, Vanda ultimately limited its assertions to four patents. Pl. Br. at 12. Relatedly,

*Inc. v. Teva Pharms. USA, Inc.,* No. 18-651, ECF No. 1. The Delaware Action culminated in a four-day bench trial before Chief Judge Colm F. Connolly in March 2022, who found in favor of Defendants. Specifically, in his December 13, 2022 decision, Chief Judge Connolly found that each claim of the four asserted patents which ultimately went to trial either was not infringed or was invalid. *See* Opinion at 71, *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc.,* No. 18-651 (D. Del. Dec. 13, 2022) [hereinafter *Vanda I*], ECF No. 336. Notably, the Delaware litigation involved—in addition to the same parties and products at issue here—the same ANDAs, the same product labels, the same patent specification, and similar prior art. It also concerned drug-drug interactions with tasimelteon (like here) as well as methods of use of tasimelteon for treating Non-24 (the sleep disorder treated by tasimelteon). *See generally id.*; *see also* Def . Br. at 11-14.

After the unfavorable ruling in Delaware, Vanda immediately appealed Chief Judge Connolly's decision to the Federal Circuit. *See* ECF No. 7-1 at 13. Because Teva's ANDA had been approved just a day before Chief Judge Connolly's ruling (and Teva was apparently prepared to go to market imminently), Vanda also petitioned the Federal Circuit to immediately enjoin Defendants from commercial marketing and sale of their generics pending appeal. *Id.* After a brief stay to properly consider Vanda's application for an injunction, the Federal Circuit concluded that "Vanda ha[d] not established that an injunction pending appeal is warranted," denying its request for an injunction and lifting the temporary stay. *Vanda Pharms. Inc. v. Teva Pharms. USA, Inc,*

---

Defendants assert that Vanda "expressly committed to the district court in Delaware that, in exchange for securing a later trial date and adding other later-issued patents to the Delaware litigation, Vanda would not assert any additional patents against Teva's and Apotex's tasimelteon products." Def. Br. at 14 n.3; *see, e.g.,* ECF No. 23-2, Ex. 2 at 29 ("[THE COURT]: … Mr. Groombridge, what you have to tell your client is that means they should not plan on ever getting to litigate in another case patents associated with these products. Fair enough? MR. GROOMBRIDGE: Yes, we understand, Your Honor."). Vanda, for its part, asserts that any agreement with the District of Delaware could not have extended to a patent that had not yet issued. *See* Pl. Br. at 16 n.5.

No. 23-1247 (Fed. Cir. Dec. 28, 2022), ECF No. 27 at 2. Having been denied the relief it sought from the District of Delaware and the Federal Circuit, Vanda then sought a temporary injunction from this Court to prevent Defendants from going to market with their generics. *See* ECF No. 7; *see also Vanda I*, Final Judgment at 3, ECF No. 338.[3]

After conferencing with the parties and hearing argument on December 29, 2022, during which the Court was made aware that Defendants intended to immediately move to transfer this action to the District of Delaware, this Court provided a schedule for the parties to address the multiple issues before it. *See* ECF Nos. 13, 14; *see also* ECF No. 15 (Ltr. from Vanda in response to Dec. 29, 2022 hearing). Defendants filed their cross-motion to transfer shortly thereafter (ECF No. 23; *see also* ECF No. 21 ("Def. Br.")), which Vanda opposed, ECF No. 40 ("Pl. Br."). These submissions included various declarations and exhibits, which the Court has also considered. *See, e.g.,* ECF Nos. 23-1, 23-2, 23-3, 24, 40-1, 40-2, 40-3, 40-4, 40-5, 40-6.

### III. LEGAL STANDARD

Section 1404(a) permits transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). "The purpose of section 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Teva Pharms. USA, Inc. v. Sandoz Inc.,* No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017) [hereinafter *Teva Pharms.*] (citing *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525-26 (D.N.J. 2000)). The burden of establishing the need for transfer rests on the moving party, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), and the ultimate decision of whether to

---

[3] Teva represents that its generic had already gone to market by the time Vanda filed its motion. *See* Def. Br. at 10. Because, as explained *infra*, the Court finds the District of Delaware's familiarity with the underlying facts and issues presented here offers strong justification for transfer, the Court believes the interests of justice are best served by reserving judgment on Vanda's application for a temporary restraining order.

transfer a case lies within the "sound discretion of the trial court." *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).

This Court's inquiry in determining whether to transfer venue pursuant to section 1404(a) is twofold. *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010) ("Section 1404 requires a two-pronged analysis."). First, the Court must determine whether jurisdiction and venue would be proper in the proposed transferee district. *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 337 (D.N.J. 2003). Second, if the Court is satisfied that jurisdiction in the transferee district is proper, it must determine whether transfer is in the interests of justice and convenience. *Id.* That inquiry "is flexible and must be made on the unique facts of each case." *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000). "While there is no definitive formula or list of the factors to consider," the Third Circuit has set out various private and public interest factors that guide the transfer analysis. *See Jumara*, 55 F.3d at 879. "Neither list of factors is exhaustive. Rather, the analysis under Section 1404(a) is flexible and individualized, based on the unique facts of each case." *Days Inn Worldwide, Inc. v. Ram Lodging, LLC*, No. 09-2275, 2010 WL 1540926, at *3 (D.N.J. Apr. 14, 2010). Indeed, a decision to transfer is based on "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citation omitted).

The private interests include: the plaintiff's forum preference; the defendant's forum preference; "whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location

of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (internal citations omitted).

Public factors to be considered include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (internal citations omitted).

### IV. DISCUSSION

Defendants argue that this action should be transferred to the District of Delaware, because that District is an appropriate forum in which Plaintiff's action could have been brought, and transfer would serve the interests of justice and convenience. Specifically, Defendants maintain that transfer is warranted because the District of Delaware has already familiarized itself with the factual, technical, and patent-related complexities through its handling of litigation concerning tasimleteon and patents in the same family as the one asserted here. *See* Def. Br. at 13-18. Defendants also assert that in a case such as this, where Vanda has selected a forum that is not its home state, the deference afforded to the plaintiff's choice of forum is minimal. *Id.* In response, Vanda argues that there is no judicial economy to be gained by transfer, because the issues that will be raised in this patent dispute differ from those raised in the case that was previously tried in the District of Delaware. Pl. Br. at 11-16. Moreover, Vanda contends that any efficiency benefits are limited when the related litigation in the proposed transferee district is not concurrently pending. *Id.*

    **A.**    **The District of Delaware is a District in Which This Action Could Have Been**

**Brought**

The threshold question on a motion to transfer venue is whether the transferee district is a "district in which this action might have been brought." 28 U.S.C. § 1404(a); *see also Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). An action "might have been brought" in a transferee district if that district has: "(1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang*, 409 F. Supp. 2d at 604 (citing *Shutte v. Armco Steep Corp.*, 431 F.2d 22, 24 (3d Cir.1970)). The Court finds that those requirements are satisfied in this case.

First, the District of Delaware has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Second, there is no dispute that the District of Delaware has personal jurisdiction over the parties to this case; indeed, the parties to this action already litigated a related action in the District of Delaware involving infringement of claims relating to the product at issue here. *See Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 227 n.5 (D.N.J. 1996) (finding jurisdiction in the transferee district was proper, where the transferee district "already exercised jurisdiction over these same defendants with respect to these same allegations."). Finally, Vanda does not contest that venue in the District of Delaware would have been proper under 28 U.S.C. § 1400(b). *See* Pl. Br. at 4. Accordingly, because the District of Delaware could have exercised subject matter and personal jurisdiction over the parties, and is a proper venue for this dispute, the Court finds that this action "might have been brought" in the District of Delaware. *See* 28 U.S.C. § 1404(a).

**B.     Transfer to the District of Delaware is in the Interests of Justice and Convenience**

Having determined that this action could have been brought in the District of Delaware, the Court next addresses whether, on balance of the pertinent *Jumara* factors, transfer is in the interests of justice and convenience. *See* 28 U.S.C. § 1404(a); *Jumara*, 55 F.3d at 879. For the reasons sets forth below, the Court concludes that transfer to the District of Delaware is appropriate.

1.     Private Interest Factors

Under Section 1404(a), the private interests a court should consider include:

> (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Danka Funding LLC v. Page, Scranton, Sprouse, Tucker & Ford, P.C.*, 21 F. Supp. 2d 465, 474 (D.N.J. 1998) (quoting *Jumara*, 55 F.3d at 879). The Court finds that all of those factors are either neutral or favor transfer.

First, while courts generally give deference to a plaintiff's choice of forum, the Federal Circuit has explained that "[w]hen a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference." *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011); *see also Liggett Grp.*, 102 F. Supp. 2d at 530 ("One situation where deference to the choice of forum is curbed is where the plaintiff has not chosen a home forum."); *Teva Pharms.,* 2017 WL 2269979, at *5 (discounting plaintiff's forum choice where it was not home forum); *Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283, 2017 WL 4543783, at *13 (D. Del. Oct. 11, 2017) (explaining that plaintiff's "preference is given limited

8

deference in light of Plaintiff's lack of a physical presence in its chosen … forum."); *Tang v. Eastman Kodak Co.*, 2021 WL 2155057, at *5 (D.N.J. May 27, 2021) ("Where a plaintiff chooses to file in a non-home forum, for instance, his choice is afforded less weight.") (citing *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 295-96 (3d Cir. 2010)). Here, it is undisputed that New Jersey is not Vanda's home forum; Vanda is incorporated in Delaware with its principal place of business in Washington, D.C. *See* Compl. ¶ 1. Accordingly, while Vanda is correct that as a general matter "a plaintiff's choice of a proper forum is a paramount consideration" in a motion to transfer, Pl. Br. at 1 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)), subsequent cases have made clear that there are important qualifications to this principle, which apply with force here. Therefore, Plaintiff's choice of forum is accorded less weight. *See Teva Pharms.*, 2017 WL 2269979, at *5; *see also Mitek Sys., Inc. v. United Services Auto. Ass'n*, No. 12-462, 2012 WL 3777423, at *5 (D. Del. Aug. 30, 2012) (finding where suit "relating to the same subject matter as this action in [transferee district]" had previously been filed, choice of forum "weigh[ed] in favor of transfer").

Second, Defendants prefer the District of Delaware. In contrast to Vanda's forum preference, Defendants' preference is bolstered by the fact that "Teva, Apotex, and Vanda are all incorporated in Delaware, and Chief Judge Connolly [in the District of Delaware] has already heard extensive evidence and testimony in a related litigation over the same products." Def. Br. at 18; *see Teva Pharms.*, 2017 WL 2269979, at *6; *Intendis, Inc. v. River's Edge Pharm., LLC*, No. 11–2838, 2011 WL 5513195, at *3 (D.N.J. Nov. 10, 2011) (finding factor two weighed in favor of transfer, where the plaintiffs had "demonstrated their willingness to litigate there" by filing a related action in that forum); *see also* ECF No. 23-2, Ex. 3 (finding Teva and Apotex incorporated in Delaware). Therefore, this factor weighs in favor of transfer.

Turning to the third factor—whether the claim arose elsewhere—the Court considers whether the operative facts giving rise to this action occurred in the instant forum. In patent infringement cases, the "operative facts" generally concern the "center of gravity" relating to the accused product, which is "the location of the product's development, testing, research and production, as well as where marketing decisions are made." *Teva Pharms.*, 2017 WL 2269979 at *6 (citation omitted). Defendants contend that the "center of gravity" cannot be New Jersey because the '129 patent's inventors reside in Maryland, and "the research, development, testing, and production of Defendants' tasimelteon product all took place outside this forum." Def. Br. at 18; *see also* ECF No. 7-7, Ex. 2 at 10 (tasimelteon manufactured for Teva in India); ECF No. 7-10, Ex. 33 (noting '129 patent inventors resided in Maryland); No. 22-7529, ECF No. 5-9, Ex. 4 at 12 (tasimelteon manufactured for Apotex in Canada). Nonetheless, Vanda responds that Defendants "fail to assert any nexus between the District of Delaware and the 'center of gravity' of this case." *See* Pl. Br. at 10.[4] That is, Vanda argues that the District of Delaware has no greater connection to the operative facts than the District of New Jersey. Because the operative facts appear to have occurred outside the two districts at issue, the Court finds this factor to be neutral. *See Teva Pharms.*, 2017 WL 2269979, at *7; *see also* Pl. Br. at 7 (acknowledging "whether the claim arose elsewhere … does not favor either side").

Finally, the Court finds that the fourth, fifth, and sixth factors are neutral. *See id.* With respect to the fourth factor, "the convenience of the parties as indicated by their relative physical

---

[4] Vanda relies on *Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1381 (Fed. Cir. 2020) for its assertion that "the forum from which their ANDAs were submitted" should contribute to the Court's analysis of the "center of gravity." Pl. Br. at 9. However, *Valeant* did not concern a motion for transfer of venue, nor did it discuss the "center of gravity" test embedded in the *Jumara* factors. In any event, as explained herein, the third *Jumara* factor is far outweighed by the practical considerations of judicial economy and efficiency of transfer.

and financial condition," *Jumara*, 55 F.3d at 879, Vanda asserts only that "Delaware would be no more convenient than New Jersey" given Newark, New Jersey's status as an international airline hub. Pl. Br. at 7. The Court agrees as far as that argument goes: that all the parties have sufficient resources to litigate in both New Jersey and Delaware. The fourth factor is thus neutral. Additionally, *Jumara* explained that courts should only consider the fifth factor—the convenience of witnesses—"to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. No such representation has been made by the parties here; nor has one been made asserting that "books and records" in this case could not be produced in the District of Delaware. *Id.* (sixth factor). Accordingly, the Court finds that factors four, five, and six are neutral, and therefore, on balance, the private interest factors weigh slightly in favor of transfer. *See Teva Pharms.,* 2017 WL 2269979, at *7 (finding private factors weigh slightly in favor of transfer in similar circumstances).

    2.    <u>Public Interest Factors</u>

Under Section 1404(a), the public interests a court should consider include:

> (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Danka Funding*, 21 F. Supp. 2d at 474 (citing *Jumara*, 55 F.3d at 879). The Court finds that although most of these factors are neutral (factor one and factors three through six), factor two weighs decidedly in favor of transfer, and thus, transfer to the District of Delaware is appropriate.

Turning to the neutral factors first, because this case arises under a federal question, it is clear that a judgment entered in either district would be enforceable (factor one) and that the judge in either forum would be appropriately familiar with the applicable law (factor six). *See Teva*

11

*Pharms.*, 2017 WL 2269979, at *8 (citing *Liggett Grp.*, 102 F. Supp. 2d at 537). Similarly, court congestion (factor three) is comparable between the two districts. *See* Def. Br. at 15. Moreover, "because this is a patent infringement lawsuit, neither this District nor the District of Delaware has a particular local interest in the dispute (factor four), and no District-specific public policies are implicated (factor five)." *See Teva Pharms.*, 2017 WL 2269979, at *8; *see also COA Network, Inc. v. J2 Glob. Commc'ns, Inc.,* No. 09-6505, 2010 WL 2539692, at *5 (D.N.J. June 17, 2010) ("Patent infringement lawsuits are matters of national concern that are not 'local controversies,' nor do they implicate the public policies of any one forum."). Accordingly, "because the other public interest factors are in equipoise, the dispositive question in determining whether to transfer this action to the District of Delaware centers on whether the practical considerations served by transfer would promote the interests of justice and convenience." *Teva Pharms.*, 2017 WL 2269979, at *8; *see also Regents of the U. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

With respect to factor two—practical considerations that could make the trial easy, expeditious, or inexpensive—Defendants argue that the District of Delaware's experience handling related litigation would greatly benefit judicial economy and thus promote the interests of justice. *See* Def. Br. at 16 (citing *Liggett Grp.*, 102 F. Supp. 2d at 537 ("Among the criteria in determining the advisability of transfer is whether transfer will promote the interests of justice."); *Metro. Life Ins. Co. v. Bank One, N.A.*, No. 03-1882, 2012 WL 4464026, at *7 (D.N.J. Sept. 25, 2012) ("One practical consideration that supports transfer is efficiency.")). Specifically, Defendants point out that this action and the Delaware litigation involve "the same parties, the same patent specification, the same ANDAs, the same product labels, and the same products." Def. Br. at 11. Moreover, Defendants note that the District of Delaware "has already expended substantial judicial resources over the last four years, including a four-day bench trial, familiarizing

itself with technical facts and issues in this action, such as drug-drug interactions with tasimelteon and the methods of treating a Non-24 patient with tasimelteon." *Id.* at 13-14. In sum, Defendants argue that transfer would avoid the wasteful duplication of effort and burden on judicial resources that § 1404(a) was designed to prevent.

In response, Plaintiff argues that there is no judicial economy by transferring to the District of Delaware because the related patent litigation is already complete before the district court, and thus the cases cannot be consolidated. *See* Pl. Br. at 12 ("Unlike in the case of 'simultaneously' pending cases, therefore, there are no efficiencies to be gained from coordinating the 'pretrial discovery,' motions practice, or 'witness . . . time and expense.'"). However, the Federal Circuit has made clear that a court's familiarity with related patents and facts from prior litigation—separate and apart from efficiencies gained by consolidation with pending litigation—is a valid factor for purposes of a motion to transfer. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("[W]e have held that a district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."); *see also In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020) (affirming transfer based in part on the fact that "[t]he transferee venue has familiarity with the underlying technology and patents"); *In re Google LLC*, 2022-140, 2022 WL 1613192, at *4 (Fed. Cir. May 23, 2022) (explaining that "a court may consider its prior familiarity with the asserted patents in assessing judicial economy considerations for transfer") (citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010); *In re Morgan Stanley*, 417 F. App'x 947, 949 (Fed. Cir. 2011) (noting that whether a "trial court has some familiarity with a matter from prior litigation" bears on "the proper administration of justice" in a motion to transfer). Indeed, the *In re Vistaprint Ltd.* panel condoned a trial court's reasoning that "substantial experience in

13

construing the patent claims during prior litigation … would be more efficient than requiring another magistrate or trial judge to start from scratch." 628 F.3d at 1344; *see also Lifecell Corp. v. Lifenet Health*, No. 15-6701, 2016 WL 3545752, at *4 (D.N.J. June 28, 2016) (finding transfer warranted where the transferee court had "an understanding of the relevant technology that will make the entire litigation more expeditious" from prior patent litigation); *EMG Tech., LLC v. Vanguard Group,* No. 12-543, 2014 WL 12597426, at *4 (E.D. Tex. Mar. 6, 2014) (basing decision on transfer motion in part on court's experience with patent from completed litigation); *Bandspeed, Inc. v. Acer, Inc.*, 2011 WL 3648453, *4 (E.D. Tex. 2011) ("In cases that involve a highly technical subject matter, such as patent litigation, judicial economy may favor transfer to a court that is already familiar with the issues involved in the case.").

Here, Chief Judge Connolly has overseen comprehensive litigation relating to tasimelteon and the applicable family of patents for over four years, ranging from discovery to motion practice to trial. Further, as explained above, the alleged infringement here hinges on a product label (and similar prior art) already considered in detail in *Vanda I*. The Delaware litigation also concerns the same patent specification, the same underlying technological and scientific issues, similar claims covering drug-drug interactions with tasimelteon, as well as method-of-use claims.[5] Therefore, the District of Delaware's substantial familiarity with the operative facts and issues of this matter offers strong support that transfer is in the interests of justice. Although the existence of pending related litigation in the transferee district might further tip the scales in favor of transfer, *see* Pl.

---

[5] Vanda concedes that "the same ANDA products are involved," Pl. Br. at 15, but nevertheless asserts "the issues in the Delaware litigation have little to do with those that will be litigated here," *id.* at 16. As explained above, however, the Court finds that Vanda understates the relevance of a prior complex drug patent case concerning the same family of patents, the same product, the same ANDAs, the same patent specification, the same product label (where this case asserts induced infringement based on that label), related prior art, and many of the same witnesses. *See* Def. Br. at 6.

Br. at 12, that does not undermine the significant benefits to judicial economy offered by the District of Delaware's experience with technical issues here. *See Magnacross LLC v. GE MDS LLC*, No. 20-964, 2020 WL 6581530, at *8 (D. Del. Nov. 10, 2020) ("Although the presence of related cases is an appropriate factor to consider, the focus is on related cases pending when this case was filed *or the Court's prior experience with the same or similar subject matter*.") (emphasis added) (citing *In re EMC Corp.*, 501 F. App'x at 976); *see also Lifecell Corp.*, 2016 WL 3545752, at *4. Given that the other factors lean slightly in favor of Defendants, this Court follows the Federal Circuit's guidance that "in a case such as this in which several highly technical factual issues are presented and the other relevant factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become familiar with the issues." *Regents of the U. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (holding "the [trial] court did not abuse its discretion by transferring the case after affording determinative weight to the consideration of judicial economy"); *see also Teva Pharms.,* 2017 WL 2269979, at *9 ("Here, the Court finds that interests of judicial economy favor transfer to the District of Delaware. While this District has extensive experience in patent infringement lawsuits, the District of Delaware is similarly experienced, and has already expanded substantial judicial resources familiarizing itself with the complex infringement issues concerning the [relevant] patent.").

In summary, most of the other *Jumara* factors are either neutral or lean towards transfer to the District of the Delaware. However, practical considerations and the judicial economy to be gained from transferring this action to a district that has extensive familiarity with the issues and factors of this matter (including the patent specification, the family of patents, the ANDAs, and the label that forms the basis of the instant action), weigh decidedly in favor of transfer. Therefore,

the Court finds that, on balance of the pertinent *Jumara* factors, transfer to the District of Delaware is appropriate.

## V.     CONCLUSION

For the reasons stated above, the Court finds transfer to the District of Delaware is warranted in this case. Defendants' Cross-Motion to Transfer is therefore **GRANTED.** An appropriate Order accompanies this Opinion.

**DATE**: February 10, 2023            *s/ Claire C. Cecchi*

                                                            **CLAIRE C. CECCHI, U.S.D.J.**